```
          UNITED STATES DISTRICT COURT
           SOUTHERN DISTRICT OF OHIO
                WESTERN DIVISION
```

Terry Franklin,                   :   Case No. 1:11-cv-608
                                  :
    Plaintiff,                    :
                                  :
vs.                               :
                                  :
CitiMortgage, Inc.,               :
                                  :
    Defendant.                    :

## ORDER

Before the Court is Plaintiff's motion to remand this case to the state court. (Doc. 7) Defendant opposes the motion (Doc. 7), and Plaintiff has replied. (Doc. 11)  Also pending is Defendant's motion to dismiss Plaintiff's complaint (Doc. 8), which is fully briefed and ready for decision.

## FACTUAL BACKGROUND

Plaintiff filed his complaint in the Hamilton County, Ohio Court of Common Pleas on July 28, 2011. (Doc. 2)  He alleges that he obtained a mortgage loan in 2003 that was serviced by Defendant CitiMortgage, and thereafter he received monthly written statements.  He did not make a mortgage payment that was due on November 1, 2008, and his January 2009 monthly statement listed a $15.00 charge for "Delinquency Expenses."  The statement defined these as "third-party expenses such as property inspection fees, property preservation costs, appraisal costs, and attorneys fees" incurred due to Plaintiff's default.  (Compl.

-1-

¶¶ 6 & 7)  Plaintiff alleged that additional charges for "Delinquency Expenses" appeared on subsequent monthly mortgage statements.  He asked CitiMortgage to provide verification of these charges, but it failed to do so.  (Compl. ¶10)

He alleges that CitiMortgage charged him delinquency expenses even though it did not actually incur these costs, and that CitiMortgage fraudulently or recklessly induced him and other borrowers to pay these expenses.  He seeks to represent a class of all Ohio residents who, in the last four years, received a CitiMortgage mortgage monthly statement that included delinquency expenses, and who paid those expenses.  For himself and the putative class of Ohio borrowers, he seeks compensatory and punitive damages, interest and attorney's fees.

CitiMortgage timely filed its notice of removal on September 2, 2011.  The notice asserts that federal jurisdiction exists pursuant to the Class Action Fairness Act of 2005, 28 U.S.C. §§1332(d) and 1453, because this case satisfies the three requirements of that statute: (1) the putative class consists of at least 100 people; (2) diversity of citizenship exists between Plaintiff and Defendant; and (3) the aggregate classwide amount in controversy exceeds $5 million exclusive of interest and costs.  CitiMortgage filed the Affidavit of Nate Blackstun in support of removal.  Mr. Blackstun is a Vice President at CitiMortgage with knowledge of Ohio mortgage loans serviced by

-2-

the company.  According to company records, 20,630 active loans in Ohio include delinquency expenses charged on the loan as of June 30, 2011.  (Doc. 4)  CitiMortgage argues that as long as each class member seeks "an average of at least $242.37 in damages," the amount in controversy requirement is satisfied. CitiMortgage then identifies several delinquency expense charges on two of Plaintiff's account statements, as well as items Plaintiff challenged in his pre-suit letters to CitiMortgage. These materials were attached to Plaintiff's written discovery requests that were filed with the complaint in the state court, and were served on CitiMortgage with the complaint.  Plaintiff's June 24, 2010 letter to CitiMortgage questioned $552.09 in cumulative delinquency expenses charged to him.  (Doc. 1, Exh. A, letter attached to Plaintiff's discovery requests at CM/ECF PAGEID 28.)

   Plaintiff seeks remand of the case, arguing that CitiMortgage has not satisfied its burden of demonstrating that the amount in controversy exceeds CAFA's jurisdictional minimum of $5 million.  He notes that his complaint is silent concerning any specific damages he may have suffered or that he seeks to recover, and he does not allege any classwide damages allegedly caused by CitiMortgage.  He argues that it would be "simple" for CitiMortgage to provide evidence to the Court that the total amount of delinquency expenses paid by the putative class exceeds

-3-

$5 million, but that it has not done so. While he admits that he "might" eventually seek to recover as much as $621.09 in delinquency charges he contends were unlawfully imposed, his complaint does not make that express allegation.

In considering the propriety of remand, "the statutes conferring removal jurisdiction are to be construed strictly because removal jurisdiction encroaches on a state court's jurisdiction. Thus, in the interest of comity and federalism, federal jurisdiction should be exercised only when it is clearly established, and any ambiguity regarding the scope of [the removal statute] should be resolved in favor of remand to the state courts." Brierly v. Alusuisse Flexible Packaging, Inc., 184 F.3d 527, 534 (6th Cir. 1999) (internal citation omitted). The existence of subject matter jurisdiction is based upon the complaint at the time of removal. Harper v. AutoAlliance Int'l, Inc., 392 F.3d 195, 210 (6th Cir. 2004).

CAFA created a basis for federal diversity jurisdiction over qualifying class actions, and the general rules governing the determination of the amount in controversy for diversity purposes were not altered by CAFA's adoption. See, e.g., Brill v. Countrywide Home Loans, Inc., 427 F.3d 446, 448 (7th Cir. 2005). When a complaint does not specifically allege damages in either more or less than the applicable threshold, a removing defendant must establish by a preponderance of the evidence that the

-4-

threshold is satisfied, that it is "more likely than not" that the complaint meets the amount-in-controversy requirement.  See, e.g., Gafford v. General Electric Co., 997 F.2d 150, 158 (6th Cir. 1993).  This does not require a defendant to prove the merits of plaintiff's claim, but does require defendant to produce some evidence supporting its assertion.  The amount in controversy is properly determined from the plaintiff's perspective, however, by focusing on the economic value of the asserted rights plaintiff seeks to protect.  Smith v. Nationwide Property and Casualty Ins. Co., 505 F.3d 401, 407 (6th Cir. 2007), quoting Woodmen of the World/Omaha v. Scarbro, 129 Fed. Appx. 194 at *2 (6th Cir. 2005).

A plaintiff who wants to avoid federal jurisdiction may do so by attaching a binding stipulation to his complaint limiting damages to an amount below the applicable jurisdictional threshold.  See, e.g., McClendon v. Challenge Financial Investors Corp., 2011 U.S. Dist. LEXIS 128178 (N.D. Ohio, November 3, 2011), granting remand of a state court class action suit based on Plaintiff's binding disclaimer of recovery of any damages for herself and for the putative class in excess of $5 million. There is no such binding disclaimer or stipulation in this case, however.

The only reference in Plaintiff's complaint to a specific delinquency expense is his allegation that he was charged $15 in

-5-

January 2009.  He claims that other unspecified charges appeared in subsequent months.  Plaintiff's initial discovery requests and the materials he attached to them, which were filed with the state court and are part of the record in this case, include several of his monthly mortgage statements and his pre-suit correspondence with CitiMortgage.  Multiplying the expenses that Plaintiff directly questioned in his June 2010 letter, expenses which he contends are typical of the putative class, by the number of Ohio mortgage holders who have been charged delinquency expenses (20,630), yields estimated classwide damages of at least $12,813,086.

Plaintiff responds that the Court may not go beyond the face of his complaint to estimate the value of the claims he asserts, and that it is improper to assume that each and every putative class member may claim the same amount.

The removal statute, 28 U.S.C. §1446(b), provides that if the initial pleading is not removable, a removal notice may be filed within thirty days after receipt of an amended pleading, motion, order "or other paper from which it may first be ascertained" that the case is removable.  Many courts have determined the amount in controversy not solely from the four corners of the complaint, but based on the entire record as it existed at the time of removal.  For example, in <u>Curry v. Applebee's International</u>, 2009 U.S. Dist. LEXIS 114143 (S.D.

Ohio, Nov. 17, 2009), plaintiffs filed suit in September 2008 alleging that Applebee's restaurants fraudulently advertised and marketed its "Weight Watchers' menu items.  The complaint sought unspecified damages on behalf of a putative class of people who bought the menu items.  The parties conducted initial discovery and attended a mediation, at which the plaintiffs cited total sales figures for the menu items during the relevant time period.  Thereafter, on January 31, 2009, plaintiff sent a written settlement demand based upon an average $7 cost per menu item sold during the class period.  More than 30 days later, when the named plaintiff confirmed that she spent over $75, defendants removed the case, arguing that Plaintiff's admission of her out of pocket expenses was the first time damages in excess of $5 million had been alleged.

The district court found that removal was untimely because the facts regarding total sales of the challenged menu items had been presented at the October 2008 mediation, and because defendants should have known no later than their receipt of the January 2009 settlement letter that damages would be based upon total sales to the class.  The court also suggested, but did not specifically find, that defendant might have had notice of removability upon receipt of the original complaint, because it would have had independent knowledge of its own total sales figures.  Id. at *24 n.5, and citing Johnson v. Hartford Fire

Ins. Co., 2008 U.S. Dist. LEXIS 62599, at *3 (W.D. Ky. Aug. 15, 2008).  In Johnson, the district court found that defendant should have known that damages would exceed the applicable $75,000 diversity jurisdictional limit based on pre-suit communications from plaintiff's counsel describing plaintiff's extensive injuries and medical care received due to a car accident giving rise to the case.

And in Finnegan v. Wendy's Int'l, 2008 U.S. Dist. LEXIS 88868 (S.D. Ohio, May 13, 2008), the complaint alleged damages in excess of $25,000, the jurisdictional minimum limit of the Ohio trial courts.  Defendant removed the case and submitted pre-lawsuit settlement demands which established that the amount in controversy was well over the diversity threshold.  The district court denied plaintiff's motion to remand.  And in Wiggins v. Daymar Colleges Group, LLC, 2011 U.S. Dist. LEXIS 78950 (W.D. Ky. July 19, 2011), plaintiffs' complaint sought reimbursement of all class members' loans, along with other compensatory and punitive damages.  Defendant submitted evidence that the average student loan for the putative class members was approximately $5,000.  The district court found the estimate of the average loan amount, given the large number of putative class members, was more than sufficient to satisfy CAFA's jurisdictional threshold.

Here, Plaintiff's pre-suit complaints contesting specific delinquency expenses sufficiently supports CitiMortgage's

-8-

argument that a reasonable estimate of Plaintiff's damages are $552.09, at a minimum. The closer question is whether it is proper to calculate classwide damages by multiplying the estimated economic value of Plaintiff's claims by the number of Ohio customers whose statements have included some type of delinquency expense. Plaintiff argues that there is nothing in his complaint alleging or suggesting that each and every putative class member was charged the same amount, and that it would be natural to expect variations among charges to each accountholder. CitiMortgage cites several cases supporting their contention, including Carvalho v. Equifax Information Servs., Inc., 629 F.3d 876 (9th Cir. 2010), where removal was timely based upon plaintiff's deposition testimony that she was seeking at least $12.5 million in class damages. But that testimony was the first time in the case that plaintiff had identified any specific damages arising from the alleged violations of the Fair Credit Reporting Act.

    A more closely analogous case is Frederico v. Home Depot, 507 F.3d 188 (3rd Cir. 2007), where plaintiff sued Home Depot for late charges she was charged when she attempted to return a rental truck to the store but found the rental counter closed. She sued for herself and on behalf of "thousands" of similarly-situated customers under the state's consumer fraud protection statute, alleging that she had been overcharged $287.14 in late

fees.  The court accepted defendant's argument that Plaintiff's claim represented an average of the damages at issue for each member of the putative class.  And plaintiff alleged (and defendant did not dispute) that the class numbered in at least the "thousands" of truck renters in the state.  The Third Circuit affirmed the district court's conclusion that defendant adequately established the requisite amount in controversy.

Similarly, in E-Shops, Corp. v. U.S. Bank Nat'l Assn., 2011 U.S. Dist. LEXIS 38311 (D. Minn. Apr. 7, 2011), an unauthorized data breach of defendant's confidential account information resulted in fraudulent credit cards used to buy goods from plaintiff.  The bank credited its customers, which caused chargebacks to plaintiff.  Plaintiff alleged that chargebacks to its account exceeded $11,000 over several months, and that a "large number" of accountholders had been victimized by the data breach.  The court assumed that if plaintiff's loss of over $11,000 was typical of the putative class members' claims, the class would only need to reach 450 members to exceed CAFA's jurisdictional limit.  Given plaintiff's allegation of "large numbers" of affected cardholders and the lack of any binding stipulation limiting classwide damages, the court found defendant had established the likelihood of at least $5 million in damages, and that the complaint had been properly removed.

Here, Plaintiff asserts that CitiMortgage should have

-10-

provided more specific information about the delinquency expenses charged to each of the 20,630 active loans in Ohio, and that its failure to do so requires remand of the case.  The Court disagrees.  It is not incumbent upon a defendant to establish to a legal certainty that the amount in controversy exceeds the jurisdictional threshold, but merely to show that it is more likely than not that the damages will exceed that threshold.  Plaintiff specifically alleges that his claim is typical of the putative class he seeks to represent, and he does not deny that prior to suit, he disputed at least $552 in expenses.  The fact that he did not allege that amount in his complaint does not preclude the Court from considering his pre-suit contentions regarding the expenses.  Given the undisputed size of the class, the Court finds that CitiMortgage has shown it more likely than not that the damages being claimed will exceed $5 million.  The Court therefore denies Plaintiff's motion to remand.

Motion to Dismiss

When reviewing a motion to dismiss under Rule 12(b)(6), the Court accepts the well-pleaded factual allegations of the complaint.  A claim will survive if those allegations are "... enough to raise a right to relief above the speculative level on the assumption that all of the complaint's allegations are true." Jones v. City of Cincinnati, 521 F.3d 555, 559 (6th Cir. 2008), citing Bell Atlantic Corp. v. Twombly, 550 U.S. 544 (2007).

Twombly essentially retired Rule 8's permissive "no-set-of-facts" pleading standard set forth in Conley v. Gibson, 355 U.S. 41, 45-46 (1957).  The Twombly court found that literal application of that standard impermissibly permits wholly conclusory claims to survive Rule 12 challenges.

And in Ashcroft v. Iqbal, 129 S.Ct. 1937 (2009), the Court expressly held that a complaint will survive a Rule 12 challenge only if its well-pleaded factual allegations are sufficient to state a claim for relief that is plausible on its face.  Facial plausibility requires pleading facts that permit a reasonable inference that the defendant is liable for the alleged misconduct.  If a complaint pleads facts that are "merely consistent with" a defendant's liability, it "stops short of the line between possibility and plausibility of 'entitlement to relief.'"  Id. at 1949 (quoting Twombly, 550 U.S. at 556-557). Iqbal also rejected any suggestion that this pleading standard should apply only when the court is not closely supervising the discovery process.  If a complaint fails the plausibility test, a plaintiff is not entitled to any discovery.  The Court noted:

> Determining whether a complaint states a plausible claim for relief will ... be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense.  But where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged--but it has not shown--that the pleader is entitled to relief.

Id.

Fed. R. Civ. P. 9(b) requires allegations of fraud to be pled with particularity, identifying the "who, what, when, where, and how" of the alleged fraud.  Sanderson v. HCA-The Healthcare Co., 447 F.3d 873, 877 (6th Cir. 2006) (internal citation omitted).  If allegations of fraudulent conduct are based upon information and belief, "... the complaint must set forth a factual basis for such belief, and the allowance of this exception must not be mistaken for license to base claims of fraud on speculation and conclusory allegations."  Id. at 878 (internal quotations and citations omitted).

As discussed above, Plaintiff's complaint alleges that CitiMortgage charged him a $15 delinquency expense in January 2009, and other expenses in subsequent months.  Plaintiff asked CitiMortgage to explain these charges and provide documentation for any third-party expenses, but CitiMortgage refused to do so.  He alleges on information and belief that CitiMortgage falsely represented that it had incurred these expenses and paid third-party service providers, and that CitiMortgage knew or recklessly disregarded the fact that the claimed expenses were false and had not actually been paid.  (Doc. 2, Complaint ¶¶11, 12)  He alleges that he relied on Defendant's representations, and would not have paid the expenses but for the representation that the expenses had in fact been incurred.  He further alleges that CitiMortgage was unjustly enriched by retention of the amounts Plaintiff paid

for those expenses.

CitiMortgage argues that Plaintiff's complaint fails to meet Rule 8's basic notice pleading standards, and that his allegations of fraud are insufficient under Rule 9(b).  It contends that any claim for unjust enrichment fails in view of the express mortgage contract, and that Ohio's voluntary payment doctrine bars his claim because he voluntarily paid the challenged delinquency expenses before filing suit.

With regard to Rule 8, it is true that Plaintiff's complaint does not identify or delineate any particular cause of action Plaintiff alleges.  Plaintiff's arguments against dismissal suggest that he is alleging fraud and/or unjust enrichment.  An Ohio common law fraud claim requires Plaintiff to allege a material misrepresentation, that was false at the time it was made, that was made with intent to induce reliance, that plaintiff justifiably relied on that misrepresentation, and that damages were proximately caused by that reliance.  See, e.g., Wing v. Anchor Media, 59 Ohio St.3d 108, 111 (1991).  Plaintiff contends that the material misrepresentations were the delinquency expense charges, and that those charges were false in that CitiMortgage did not actually incur those costs in relation to Plaintiff's default.  The charges appeared on monthly mortgage statements, which Plaintiff was required to pay in order to avoid further default.  And the alleged damages, the amount of the

expenses, were proximately caused by the monthly statements because Plaintiff paid them.  CitiMortgage's notice of removal and its motion to dismiss do not suggest that it cannot understand Plaintiff's allegations such that it cannot frame a responsive pleading or raise appropriate affirmative defenses.

Rule 9(b)'s heightened pleading standard is intended to provide adequate notice to a defendant of specific fraudulent misrepresentations it must defend against.  Plaintiff's complaint challenges delinquency expenses, and identifies where the alleged misrepresentations were made to him (the monthly statements). Plaintiff's allegations of fraud or reckless disregard are made upon information and belief.  See Compl. ¶¶11-14.  But Rule 9(b) requires specificity in pleading the "circumstances" constituting fraud; it states that "malice, intent, knowledge, and other conditions of a person's mind may be alleged generally." Plaintiff alleges that he repeatedly asked for documentation of the delinquency expenses, and CitiMortgage refused to provide it, raising an inference that there was no documentation.  (See Compl. ¶¶9, 10)  He argues that the knowledge of and evidence about whether these expenses reflect actual costs as defined in the account statements is solely within CitiMortgage's control.

The Court finds that the complaint, while not a model of clarity, is sufficient to satisfy both Rule 8 and Rule 9(b), if Plaintiff is alleging a common law fraud claim.  The additional

specificity CitiMortgage seeks can be obtained through discovery. Moreover, Plaintiff correctly notes that CitiMortgage has knowledge of what delinquency expenses were charged and why they were charged to Plaintiff and to other class members. The Sixth Circuit has noted that Rule 9(b) may be relaxed when there has been a lack of discovery and the information needed for a plaintiff to achieve particularity is held exclusively by the opposing party. See Michaels Bldg. Co. v. Ameritrust Co., N.A., 848 F.2d 674, 680 (6th Cir. 1988). However, so that CitiMortgage has clear notice of the legal basis for Plaintiff's complaint, Plaintiff shall file an amended complaint to clearly allege the specific causes of action he wishes to prosecute in this case.

Unjust enrichment occurs "when a party retains money or benefits which in justice and equity belong to another." Cooper v. Smith, 155 Ohio App.3d 218, 228, 800 N.E.2d 372 (Ohio App. 2003). Liability for unjust enrichment is a quasi-contractual remedy which arises when (1) a benefit is conferred by plaintiff, (2) defendant has knowledge of the benefit, and (3) defendant's retention of that benefit without payment would be unjust. Id. Unjust enrichment is based upon a defendant's gain, not a plaintiff's loss. Warren Concrete & Supply, Inc. v. Strohmeyer Constr., Inc., 2010 Ohio App. LEXIS 4564, *18 (Ohio App., November 5, 2010).

It appears to be settled Ohio law that "Absent bad faith,

fraud, or some other illegality, an equitable action for unjust enrichment will not lie when the subject of the claim is governed by an express contract." Cent. Allied Enters. v. Adjutant Gen. Dep't., 2011 Ohio 4920, at *39 (10th Dist. App., Sept 27, 2011); Cleveland Mack Leasing, Ltd. v. Chef's Classics, Inc., 2006 Ohio 888, at P34 (7th Dist. App., February 24, 2006): "Absent fraud or illegality, a party to an express agreement may not bring a claim for unjust enrichment, particularly when the express agreement contains a provision governing the allegedly inequitable conduct of the other party."

Ohio's voluntary payment doctrine generally provides that a voluntary payment based on a claim of right cannot be recouped simply because the payee made a mistake of law. See, e.g., State ex rel. Dickman v. Defenbacher, 151 Ohio St. 391, 395 (Ohio 1949). However, as with the unjust enrichment doctrine, this doctrine does not apply when plaintiff alleges "fraud, duress, compulsion or mistake of fact." Id. Plaintiff is apparently alleging common law fraud, and the Court will not dismiss his claim at this early stage based upon either of these legal doctrines.

## CONCLUSION

For all of the foregoing reasons, Plaintiff's motion to remand this case (Doc. 7) is denied. Defendant's motion to dismiss (Doc. 8) is denied, but Plaintiff shall file an amended

complaint within twenty days of the entry of this Order, or **no later than January 23, 2012**, that clearly identifies the causes of action he wishes to prosecute.  Nothing in this Order shall preclude Defendant from challenging any new cause of action alleged in that amended complaint.

    SO ORDERED.

DATED: January 3, 2012       <u>s/Sandra S. Beckwith</u>
                                  Sandra S. Beckwith
                                  Senior United States District Judge